FILED
IN THE OFFICE OF THE
CLERK OF SUPREME COURT
DECEMBER 1, 2023
STATE OF NORTH DAKOTA

# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2023 ND 228

Heidi Holm,

Petitioner and Appellee

v.

Joshua Holm,

Respondent and Appellant

## No. 20230128

Appeal from the District Court of Stark County, Southwest Judicial District, the Honorable James D. Gion, Judge.

REVERSED.

Opinion of the Court by Crothers, Justice, in which Chief Justice Jensen and Justices McEvers, Tufte, and Bahr joined. Chief Justice Jensen filed an opinion concurring, in which Justice Bahr joined.

Jared W. Gietzen, Dickinson, ND, for petitioner and appellee; submitted on brief.

Thomas F. Murtha IV, Dickinson, ND, for respondent and appellant.

**Crothers, Justice.**

[¶1] Joshua Holm appeals from a disorderly conduct restraining order prohibiting him from having contact with Heidi Holm for a period of six months. We reverse, concluding the district court abused its discretion when it issued the restraining order without finding Joshua Holm intended to adversely affect Heidi Holm's safety, security, or privacy.

I

[¶2] Heidi Holm's petition for the restraining order alleged the parties' marriage had deteriorated; they agreed to separate; he attempted to force her into sex; other people warned her that he was "not in his right mind;" he took substantial amounts of money from her safe and their joint checking accounts; he has weapons; and she is fearful of him. The district court issued a temporary restraining order, set the case for a 15-minute hearing, and entered an order setting a procedure for the hearing. The court required the parties to file requests to obtain a full evidentiary hearing. Absent a request, the court required the parties to present evidence by affidavit with the affiant available for cross-examination, and it required the opposing party give notice of intent to cross-examine. Neither party requested a full evidentiary hearing. Heidi Holm gave notice she intended to cross-examine Joshua Holm.

[¶3] Heidi Holm called Joshua Holm as a witness at the hearing. He acknowledged she owned the marital home and admitted he knew she did not want him there and did not want to speak with him. He testified they agreed he would bring a sheriff to accompany him whenever he came to the home, but he acknowledged going to the home unaccompanied once because the sheriff was unavailable and he needed tools and fuel for work. Heidi Holm did not testify or provide additional evidence.

[¶4] The district court found Joshua Holm's "appearance on the property without the presence of the sheriff, after that was an agreement, is specific conduct that qualifies as disorderly conduct." The court entered a six-month

1

restraining order stating "Joshua went to the property without law enforcement and attempted to engage in conversation with Heidi after she requested he leave." Joshua Holm appeals.

## II

[¶5]  Joshua Holm argues Heidi Holm failed to meet her burden of proving disorderly conduct occurred. He claims she provided no evidence to establish he intended to adversely affect her safety, security, or privacy by being present at the home, and the district court's findings are inadequate to show reasonable grounds exist for the order.

[¶6]  To obtain a disorderly conduct restraining order, a petitioner must show there are "reasonable grounds to believe that the respondent has engaged in disorderly conduct." N.D.C.C. § 12.1-31.2-01(5)(d). Disorderly conduct is defined as "intrusive or unwanted acts, words, or gestures that are intended to adversely affect the safety, security, or privacy of another person." N.D.C.C. § 12.1-31.2-01(1). A petitioner must allege "specific facts or threats." *Cusey v. Nagel*, 2005 ND 84, ¶ 7, 695 N.W.2d 697. Vague generalities are insufficient because of the stigma and consequences a disorderly conduct restraining order creates. *Id.* at ¶ 11. If the petitioner has established facts "sufficient to warrant a person of reasonable caution to believe" disorderly conduct occurred, reasonable grounds exist for the court to issue a restraining order. *Id.* at ¶ 6 (quoting *Svedberg v. Stamness*, 525 N.W.2d 678, 682 (N.D. 1994)). "Reasonable grounds" in the context of a disorderly conduct restraining order is "synonymous with probable cause." *Baker v. Mayer*, 2004 ND 105, ¶ 13, 680 N.W.2d 261 (quoting *Tibur v. Lund*, 1999 ND 176, ¶ 7, 599 N.W.2d 301).

[¶7]  We review a district court's decision to grant a disorderly conduct restraining order for an abuse of discretion. *Combs v. Lund*, 2015 ND 10, ¶ 4, 858 N.W.2d 311. "The district court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, when it misinterprets or misapplies the law, or when its decision is not the product of a rational mental process leading to a reasoned determination." *Id.* (quoting *Hanisch v. Kroshus*, 2013 ND 37, ¶ 9, 827 N.W.2d 528). Rule 52(a), N.D.R.Civ.P., applies to disorderly conduct restraining order proceedings. *Combs*, at ¶ 17. The court

2

must state its findings with "sufficient specificity" to afford a clear understanding of the court's decision. *Id.* General or conclusory findings are insufficient. *Id.*

[¶8] A petitioner bears the burden of demonstrating how a respondent's conduct affected the petitioner's safety, security, or privacy, and the district court must make specific findings concerning the respondent's intent. *Rekow v. Durheim*, 2022 ND 177, ¶¶ 7-9, 980 N.W.2d 917. Rekow testified Durheim came to his property, swore at him, called him names, was threatening, and refused to leave. *Id.* at ¶ 2. The district court found Durheim's refusal to leave the property constituted disorderly conduct. *Id.* at ¶ 3. We reversed concluding the district court's findings were conclusory and "did not explain how Durheim's conduct toward Rekow (not leaving the yard immediately when asked and mutual yelling) affected his safety, security, or privacy, or that her conduct was intended to do so." *Id.* at ¶ 9.

[¶9] Here, as in *Rekow*, the district court did not make findings concerning Joshua Holm's intent or explain how his actions adversely affected Heidi Holm. The court found disorderly conduct occurred based on Joshua Holm's testimony that he walked into the marital home's garage as Heidi Holm was closing the overhead door. Her counsel asked:

> "Q. Why would you return to the property, Josh, if Heidi has asked you not to return there?
>
> A. Because I needed to get some tools for work and some fuel for work.
>
> Q. Okay. Was that communicated previously through a text message or otherwise?
>
> A. We communicated quite a bit, and we were in agreeance of I would come out and get different things, and each time I would come out, a sheriff would accompany me so that she couldn't accuse me of anything.
>
> Q. Okay. But that time you are referencing when you showed up, the sheriff wasn't actually there accompanying you; true?

3

A. True. Because he was unavailable, and I text messaged him and told him that I was going out there."

The district court noted intent is difficult to determine in the context of a failing marriage because of the emotions involved. The court explained the discord between the parties could be dealt with in their divorce action, including through contempt proceedings, but "potentially there is an issue that is going to pop up before that is clarified in the divorce court." The court concluded: "I am going to find that Mr. Holm's appearance on the property without the presence of the sheriff, after that was an agreement, is specific conduct that qualifies as disorderly conduct."

[¶10] The district court did not comply with N.D.C.C. § 12.1-31.2-01 when it issued the disorderly conduct restraining order without evidence or a finding that Joshua Holm intended to adversely affect Heidi Holm's safety, security or privacy. As the petitioner, Heidi Holm bore the burden of proving Joshua Holm acted with adverse intent. She asserts she met her burden based on her petition, which alleged he attempted to force her into sex and stole her property. The court made no findings concerning these allegations. The petition itself is inadmissible hearsay. *See Sollin v. Klein*, 2021 ND 75, ¶ 13, 958 N.W.2d 144; *Cusey*, 2005 ND 84, ¶ 15. Joshua Holm's admission that he was present at the marital home against Heidi Holm's wishes does not, on its own, establish reasonable grounds for a restraining order. Therefore, the district court abused its discretion when it issued the restraining order without a finding of adverse intent.

III

[¶11] Joshua Holm argues the district court's hearing procedure violated his right to due process by shifting the burden to him and depriving him of a full hearing. We need not address his constitutional due process argument because we have decided, based on the evidence presented, the district court erroneously issued the disorderly conduct restraining order. *See State v. Hunt*, 2019 ND 127, ¶ 9, 927 N.W.2d 412 (stating it "is a cardinal rule of decision making to avoid constitutional confrontations where there are appropriate

4

alternative grounds to resolve the case before us") (quoting *Interest of Goodwin*, 366 N.W.2d 809, 814 (N.D. 1985)).

IV

[¶12] The disorderly conduct restraining order is reversed.

[¶13] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte
Douglas A. Bahr

**Jensen, Chief Justice, concurring.**

[¶14] The majority is well written and correctly concludes the district court abused its discretion when it issued the restraining order without finding Joshua Holm intended to adversely affect Heidi Holm's safety, security, or privacy. I join in the majority opinion reversing the district court. However, I write separately to note that my agreement with the majority should not be interpreted as approval of the procedure employed in the underlying proceedings, an issue I understand is unnecessary for the resolution of this case.

I

[¶15] After determining the issuance of a preliminary restraining order was appropriate, the district court issued a scheduling order which deviated significantly from the statutory procedure for restraining orders. The procedure for a hearing to determine whether or not a disorderly conduct restraining order should extend beyond the preliminary period is governed by N.D.C.C. § 12.1-31.2-01 and, in subsection 5, includes the following:

> 5. The court may grant a disorderly conduct restraining order ordering the respondent to cease or avoid the disorderly conduct or to have no contact with the applicant if:
>
> a. A person files a petition under subsection 3;

5

b. The sheriff serves the respondent with a copy of the temporary restraining order issued under subsection 4 and with notice of the time and place of the hearing;

c. The court sets a hearing for not later than fourteen days after issuance of the temporary restraining order or at a later date if good cause is shown; and

d. The court finds after the hearing that there are reasonable grounds to believe that the respondent has engaged in disorderly conduct. If a person claims to have been engaged in a constitutionally protected activity, the court shall determine the validity of the claim as a matter of law and, if found valid, shall exclude evidence of the activity.

The statutory procedure specifically calls for the district court to set a hearing no later than 14 days after the issuance of a temporary order and notice of the time and place for the hearing is required to be provided to the respondent.

[¶16] The procedure set by the district court in this case did not follow the procedure proscribed in the statute or any procedural rule promulgated by this Court for application to disorderly conduct restraining order proceedings. Instead, the procedure adopted in this proceeding appears to closely mirror the procedure set by N.D.R.Ct. 8.2(d) and applicable to interim orders issued in domestic relations cases. There are significant differences between domestic relations interim order proceedings and the disorderly conduct restraining order process. Disorderly conduct restraining order hearings are the final hearing. In contrast, interim order proceedings contemplate a temporary proceeding with an interim order intended to be replaced after a subsequent full proceeding. The disorderly conduct restraining order hearings are full hearings intended to fully adjudicate the request for the order. In contrast, the process provided in Rule 8.2(d) was, at least in part, intended to avoid "mini trials" with submission of evidence similar to what will eventually occur at the end of the domestic relations case. Finally, the disorderly conduct restraining order process is a proceeding initiated by a petitioner seeking to impose restrictions on the respondent, a process which places the burden of proof

6

squarely on the petitioner. In contrast, interim order proceedings, while they can include restrictive provisions, are a proceeding in which the parties, for the most part, stand on equal footing. While not necessary for resolution in this case, the use of the interim order process in disorderly conduct restraining order proceedings raises due process concerns.

[¶17] Jon J. Jensen, C.J.

Douglas A. Bahr